Case 4:20-cr-00535   Document 1   Filed on 11/03/20 in TXSD   Page 1 of 14

United States Courts
Southern District of Texas
FILED

*November 03, 2020*

David J. Bradley, Clerk of Court

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. **4:20cr535** |
| | § | |
| ZHENG "MIRANDA" ZHOU, | § | *UNDER SEAL* |
| QINGHUA "SHIRLEY" SONG | § | |
| KUN "BRUCE" LIU, | § | |
| YUE "JOANNA" PENG, | § | |
| DENG "DAVID" YONGQIANG, | § | |
| LI "CATHY" CHEN, | § | |
| XIN "DEVIN" ZHANG, | § | |
| SHAOHUI "JASPER" JIA, | § | |
| Defendants. | | |

## INDICTMENT

The United States Grand Jury charges:

### INTRODUCTION

At all times relevant to this Indictment:

1. Winland International, Inc. (Winland) was incorporated in the state of Texas in 1997, and listed business addresses in Houston, Texas and Missouri City, Texas. Winland purported to sell tires to retailers and consumers.

2. Super Tire, Inc. was incorporated in the state of Texas in 1999, with a listed business address in Missouri City, Texas, and was dissolved in 2009. Winland did business under the name of Super Tire, and through Super Tire, purported to sell tires to retailers and consumers.

3. Defendant **ZHENG "MIRANDA" ZHOU** (**ZHOU***),* resided in Missouri City, Texas, and directed and controlled the operations of Winland and Super Tire.

4. Defendant **KUN "BRUCE" LIU** (**LIU**) resided in Sugarland, Texas, and was the Vice-

1

President of Winland and Super Tire.

5. Defendant **QINGHUA "SHIRLEY" SONG (SONG)** resided in Jurupa Valley, California, the People's Republic of China, and was the President and owner of Qingdao Sinorient International Co. Ltd. (Sinorient).

6. Defendant **YUE "JOANNA" PENG** resided in the People's Republic of China, and was selling tires for Qingdao Odyking Tyre Co., Ltd. (Odyking).

7. Defendant **LI "CATHY" CHEN (CHEN)** resided in the Peoples Republic of China and was a sales manager for Qingdao Wangyu Rubber Co., Ltd. (Wangyu).

8. Defendant **XIN "DEVIN" ZHANG (ZHANG)** resided in the Peoples Republic of China and was an agent of Winland.

9. Defendant **SHAOHUI "JASPER" JIA (JIA)** resided in the People's Republic of China and was an agent of Winland.

10. Defendant **DENG "DAVID" YONGQIANG (YONGQIANG)** resided in the People's Republic of China and was an agent of Winland.

GENERAL ALLEGATIONS

<u>Importing Merchandise into the United States</u>

11. The Harmonized Tariff Schedule of the United States (HTSUS) set forth tariff (duty) rates and statistical categories for all merchandise imported into the United States. The HTSUS was based on the Harmonized System, which was the global system of nomenclature applied to most world trade in goods.

12. Companies and individuals that imported merchandise into the United States were required to pay duties associated with that merchandise identified in the HTSUS, as well as any additional duties mandated by the United States, including antidumping duties.

13.  It was the responsibility of U.S. Customs and Border Protection (CBP) to assess and collect all duties, taxes and fees on merchandise imported into the United States.

14. It was the responsibility of U.S. Immigration and Customs Enforcement – Homeland Security Investigations (HSI) to investigate violations of customs importation laws as prescribed in the Tariff Act of 1930 and subsequent revisions and additions to that law.

15. Every importation of merchandise into the United States, whether free of duty and regardless of value, except for articles specifically exempted by law or regulation, were required to be accompanied by an entry package for review by CBP.  The entry package consisted of Customs Form 3461 (CF 3461), CF 7501, and required documentation such as commercial invoices, packing lists, bills of lading (air or ocean shipping information), certificates of origin, and any other documentation required either by CBP or another agency with applicable regulatory requirements.  CF 3461 provided information to CBP about the shipment, including the country of origin and the manufacturer.

16.  When an importer's shipment of merchandise reached the United States, the importer of record, or the importer's authorized representative, was required to present the entry documents corresponding to the merchandise to CBP.  The documents could be presented in person or through an electronic database.  The information provided on the CF 7501 assisted CBP personnel in determining the admissibility and dutiable status of the merchandise.

17. Any applicable customs' duties are calculated by CBP by applying the proper duty rate for the specific merchandise to its value as shown on the invoice and the other supporting documentation.  One particular type of duty is an antidumping duty.

Antidumping Duties on Tires from China

18. Per Title VII of the Tariff Act of 1930, antidumping duties are designed to protect domestic industry from injury when supplier countries "dump" cheaper foreign merchandise into the commerce of the United States. Antidumping duties are imposed after a determination has been made by the U.S. Department of Commerce (DOC) that a class or kind of foreign merchandise is being sold in the United States at less than fair market value. Antidumping duties are to be paid by the importer at the time of entry in addition to any other duty owed for the merchandise. The payment of antidumping duties by the importer ensures that foreign suppliers do not gain unfair advantage over American manufacturers.

19. Beginning on July 15, 2008, DOC published antidumping duty orders (ADD Orders) imposing antidumping duties on importations of certain Off-the-Road (OTR) Tires from the People's Republic of China (PRC) (together, OTR Tire ADD Orders). DOC issued OTR Tire ADD Orders because tire manufacturers in the PRC were "underselling" OTR tires. These unfair practices caused material harm to the U.S. tire industry, including decreased production, decreased employment, and lost sales and revenue.

20. On August 10, 2015, DOC published antidumping duty orders which imposed antidumping duties on importations of certain passenger vehicle and light truck (PVLT) tires from the People's Republic of China (PRC) (together, PVLT Tire ADD Orders). DOC issued PVLT Tire ADD Orders because PVLT Tire manufacturers in the PRC were selling PVLT tires in the United States at less than fair market value, and these unfair practices caused material harm to the U.S. tire industry.

21. PVLT Tire ADD Orders required companies and individuals importing PVLT tires into the United States from PRC to pay an additional country-wide antidumping duty rate equivalent to 76.46 percent of the value of the tires imported.  However, PVLT Tire ADD Orders provided that select manufacturers and exporters (Combination Manufacturers-Exporters) would not be assessed the country-wide 76.46 percent duty rate, but would instead be assessed alternative Combination Duty Rates.

22. OTR Tire ADD Orders required companies and individuals importing OTR Tires into the United States from PRC to pay a country-wide antidumping duty rate equivalent to 210.48 percent of the value of the tires imported.

## COUNT ONE

Conspiracy to Wire Fraud
Title 18 U.S.C. § 1349

THE CONSPIRACY

23. From in or around November 2008, and continuing to in or about December 2018, in the Houston Division of the Southern District of Texas, and elsewhere,

**ZHENG "MIRANDA" ZHOU (ZHOU),**

**QINGHUA "SHIRLEY" SONG (SONG)**

**KUN "BRUCE" LIU (LIU),**

**XIN "DEVIN" ZHANG (ZHANG),**

**YUE "JOANNA" PENG (PENG),**

**SHAOHUI "JASPER" JIA (JIA),**

**DENG "DAVID" YONGQIANG (YONGQIANG), and**

**LI "CATHY" CHEN (CHEN)**

did knowingly conspire and agree with each other and others known and unknown to the grand jury to intentionally and knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used interstate wire communications facilities in carrying out the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

THE PURPOSE OF THE CONSPIRACY

24. It was a purpose of the conspiracy that the co-conspirators operated a scheme to fraudulently avoid making duty payments to the United States by submitting false entry documents, false invoices, and/or false wire transfer records to CBP.

25. The co-conspirators falsified entry documents submitted to CBP that concealed the actual manufacturer and exporter of tires imported into the United States.

26. The co-conspirators entered false value amounts associated with these tires, which in turn caused fewer duties to be paid to the United States.

27. The co-conspirators manipulated and submitted to CBP false wire transfer records to conceal the amounts actually paid for the tires to conceal the scheme.

28. The co-conspirators used interstate and international wires to carry out the scheme.

THE MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

29. The co-conspirators would and did purchase OTR Tires and PVLT Tires from PRC manufacturers that were subject to the PRC country wide ADD duty rates associated with OTR Tires (210.48%) and PVLT Tires (76.46%).

30. The co-conspirators would and did pay and receive money and valuable consideration in exchange for using *pro-forma* records of Combination Exporters-Manufacturers to create the false impression that OTR and PVLT Tires manufactured by Combination Exporters-Manufacturers were being imported into the United States.

31. The co-conspirators would and did cause to be submitted to CBP entry records claiming that OTR Tires and PVLT Tires entered into the United States were exempt from the PRC country-wide duty rates associated with OTR Tires and PLVT Tires, and instead were subject to the lower Combination Duty Rates associated with Combination Exporters-Manufacturers. These entry records submitted to CBP allowed the co-conspirators to pay the lower Combination Duty Rates, instead of the higher PRC country-wide duty rates associated with OTR Tires and PVLT Tires made by the true manufacturer of these tires.

32. The co-conspirators would and did cause to be created false invoices and false entry documents to (1) conceal the actual manufacturers and exporters of OTR Tires and PVLT Tires imported into the United States, and (2) understate the value of OTR Tires and PVLT Tires imported into the United States.

33. The co-conspirators would and did cause to be created and submitted to CBP falsified records of wire transfers, to conceal the actual amounts paid for OTR Tires and PVLT Tires and to conceal the true manufacturers of the OTR Tires and PVLT Tires imported into the United States.

34. The co-conspirators used interstate and international wires to submit false records to CBP and to otherwise carry out the scheme.

## COUNTS TWO - SIX
Wire Fraud
Title 18 U.S.C. §§ 1343 and 2

At all times material to this indictment:

The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs one through thirty-four of the indictment:

### THE SCHEME TO DEFRAUD

35. From in or about November 2008, and continuing to in or about December 2018, in the Houston Division of the Southern District of Texas and elsewhere, the defendants,

**ZHENG "MIRANDA" ZHOU (ZHOU),**

**QINGHUA "SHIRLEY" SONG (SONG)**

**KUN "BRUCE" LIU (LIU),**

**XIN "DEVIN" ZHANG (ZHANG),**

**YUE "JOANNA" PENG (PENG),**

**SHAOHUI "JASPER" JIA (JIA),**

**DENG "DAVID" YONGQIANG (YONGQIANG), and**

**LI "CATHY" CHEN (CHEN)**

did aid and abet one another and others known and unknown to the Grand Jury, to knowingly devise and intend to devise a scheme and artifice to defraud, for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

## THE MANNER AND MEANS OF THE SCHEME

36. It was part of the scheme that the defendants **ZHOU** and **LIU** did purchase OTR Tires and PVLT Tires from PRC manufacturers that were subject to the PRC country-wide ADD duty rates associated with OTR Tires (210.48%) and PVLT Tires (76.46%).

37. It was further part of the scheme that the defendants **ZHOU** and **LIU** would and did pay and receive money and valuable consideration to **SONG** and **CHEN** in exchange for using *pro-forma* records of Combination Exporters-Manufacturers to create the false impression that OTR and PVLT Tires manufactured by Combination Exporters-Manufacturers were being imported into the United States.

38. It was further part of the scheme that **JIA**, **SONG** and **CHEN** would and did create, supply, or cause the creation or supply of, falsified records or *pro-forma* templates for falsified records of Combination Exporters-Manufacturers.

39. It was further part of the scheme that **ZHOU** and **LIU** would and did cause to be submitted to CBP false entry records claiming that OTR Tires and PVLT Tires entered into the United States were purchased from Combination Exporters-Manufacturers, and were therefore exempt from the PRC country-wide duty rates associated with OTR Tires and PLVT Tires from PRC.

40. It was further part of the scheme that **ZHOU** and **LIU** would and did cause to be created false invoices and other false entry documents to conceal the actual manufacturers and exporters of OTR Tires and PVLT Tires imported into the United States by Winland and Super-Tire.

## THE EXECUTION OF THE SCHEME

41. On or about the dates set forth below, for the purpose of executing the aforementioned

scheme to defraud and intending to do so, the defendants did aid and abet one another and others known and unknown to the grand jury, to transmit and cause to be transmitted in interstate and foreign commerce writings, signals and communications, that is, the defendants submitted declarations to CBP falsely stating that the names of manufacturers and exporters of tires imported into the United States by Winland and Super-Tire, in which caused an electronic signal to travel across state lines from Winland and Super-Tire computers located in the Southern District of Texas to a CBP computer located in Springfield, Virginia, in the following amounts:

| COUNT | DEFENDANT | ENTRY/ DATE | CLAIMED MANUFACTURER/ EXPORTER & DUTY RATE | ACTUAL MANUFACTURER/ EXPORTER & DUTY RATE |
|---|---|---|---|---|
| 2 | ZHOU ZHANG JIA SONG CHEN | E6F-00004495/ May 18, 2016 | Tengzhou Broncho Tyre Co., Ltd./ Qingdao Sinorient International Co., Ltd. 13.92% | Qingdao Wangyu Rubber Co., Ltd. 210.48% |
| 3 | ZHOU ZHANG JIA SONG CHEN | E6F-00004842/ January 16, 2017 | Tengzhou Broncho Tyre Co., Ltd./ Qingdao Sinorient International Co., Ltd. 13.92% | Qingdao Wangyu Rubber Co., Ltd. 210.48% |
| 4 | ZHOU JIA CHEN SONG | E6F-00004883/ May 5, 2017 | Tengzhou Broncho Tyre Co., Ltd./ Qingdao Sinorient International, Ltd. | Qingdao Wangyu Rubber Co., Ltd. 210.48% |
| 5 | ZHOU JIA CHEN SONG | E6F-00005963 January 7, 2018 | Tengzhou Broncho Tyre Co., Ltd./Qingdao Sinorient International Co., Ltd. 13.92% | Qingdao Wangyu Rubber Co., Ltd. 210.48% |
| 6 | ZHOU JIA CHEN SONG | E6F-00006615 May 3, 2018 | Tengzhou Broncho Tyre Co., Ltd./Qingdao Sinorient International Co., Ltd. 13.92% | Qingdao Wangyu Rubber Co., Ltd. 210.48% |

All in violation of Title 18, United States Code, Section 1343 and 2.

## COUNTS SEVEN - TEN

ENTRY OF GOODS BY MEANS OF FALSE STATEMENTS
Title 18 U.S.C. §§ 542 and 2

At all times material to this indictment:

The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs one through thirty-four of the indictment.

From in or about November 2008 through August 22, 2018, in the Houston Division of the Southern District of Texas and elsewhere, the defendants,

**ZHENG "MIRANDA" ZHOU (ZHOU),**

**QINGHUA "SHIRLEY" SONG (SONG)**

**KUN "BRUCE" LIU (LIU),**

**XIN "DEVIN" ZHANG (ZHANG),**

**YUE "JOANNA" PENG (PENG),**

**SHAOHUI "JASPER" JIA (JIA),**

**DENG "DAVID" YONGQIANG (YONGQIANG), and**

**LI "CATHY" CHEN (CHEN)**

did aid and abet with others known and unknown to the Grand Jury, to knowingly devise and intend to devise a scheme and artifice to enter or introduce into the commerce of the United States imported merchandise by means of fraudulent or false invoices, declarations, and by means of false statements, written and verbal, and by means of false or fraudulent practices or appliances, and by false statements in a declaration without reasonable cause to believe the truth of such statement, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

THE MANNER AND MEANS OF THE SCHEME

42. It was part of the scheme that the defendants **ZHOU**, **LIU, YONGQIANG, JIA, SONG,** and **CHEN** would and did submit, or cause to be submitted, false invoices and false entry records to CBP for the purpose of entering OTR Tires and PVLT Tires into the United States and paying fewer duties on this merchandise than would have been paid if true invoices and entry records were submitted.

43. It was a further part of the scheme that the defendants **ZHOU** and **LIU** would and did pay valuable consideration to defendants **SONG, YONGQIANG** and **CHEN** in exchange for using *pro-forma* invoices and entry records of PRC manufacturers and exporters of PRC tires to submit false claims to CBP.

44. It was a further part of the scheme that the defendants **SONG**, **YONGQIANG** and **CHEN** would provide to defendants **ZHOU** and **LIU** invoices which falsely reflected lower amounts paid by Winland for tires than the amounts that were actually paid by Winland for these tires.

45. It was a further part of the scheme that the defendants **ZHOU** and **LIU** would use these falsified invoices with the false low values to support the submission of false entry records for Winland, and claim to CBP that Winland paid less for tires than it actually paid, thus allowing Winland to pay fewer duties to CBP than it would have paid if the entry records were true.

THE EXECUTION OF THE SCHEME

46. On or about the dates set forth below, for the purpose of executing the aforementioned scheme to defraud and intending to do so, the defendants did intentionally and knowingly, aid and abet one another and others known and unknown to the Grand Jury, and caused and

attempted to cause to be entered into the commerce of the United States through the Houston, Texas metropolitan area in the Southern District of Texas, and elsewhere, the following entries of PVLT Tires, and did intentionally and knowingly aid and abet one another and others known to the Grand Jury, and caused to be submitted to CBP, the following false statements relating to the value of these tires, all with no reasonable cause to believe the truth of these statements:

| COUNT | DEFENDANT | ENTRY NO. DATE | ENTERED VALUE | PRICE ACTUALLY PAID |
|---|---|---|---|---|
| 7 | **ZHOU ZHANG YONGQIANG** | E6F-00004586 May 26, 2016 | $68,729.00 | $91,308.30 |
| 8 | **ZHOU** | EAE-01236395 October 31, 2017 | $60,950.00 | $95,344.00 |
| 9 | **ZHOU LIU** | E6F-00005450 August 10, 2017 | $33,917.00 | $48,941.22 |
| 10 | **ZHOU LIU** | E6F-00006599 & E6F-00006912 May 1, 2018 & July 23, 2018 | $17,436.00 & $18,876.50 | $24,909.30 & $27,481.00 |

All in violation of Title 18, United States Code, Section 542 and 2.

## NOTICE OF CRIMINAL FORFEITURE

Pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and 982(a)(2)(B), the United States gives notice that upon a Defendants' conviction of an offense charged in Counts 1 - 10, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

The United States gives notice that it will seek a money judgment against each Defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p)

exist, the United States will seek to forfeit any other property of the Defendants up to the amount of the money judgment.

A TRUE BILL:

**Original Signature on File**

FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK
UNITED STATES ATTORNEY

By: *[signature]*
Suzanne Elmilady
Assistant United States Attorney
(713) 567-9000

By: *[signature]*
Craig M. Feazel
Assistant United States Attorney

14